UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JANE AND JOHN DOE 1–4, *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs <br><br> v. <br><br> UNIVERSITY HOSPITALS HEALTH SYSTEM, INC., *et al.*, <br><br> Defendants | Case No.: 1:20 CV 482 <br><br> JUDGE SOLOMON OLIVER, JR. <br><br><br><br><br><br><br><br> ORDER |

Currently pending before the court in the above-captioned case are Defendants University Hospitals Health System, Inc.; University Hospitals Cleveland Medical Center; and University Hospitals Ahuja Medical Center, Inc.'s (collectively, "UH Defendants"), Motion to Dismiss for Lack of Subject-Matter Jurisdiction or, alternatively, to Strike Plaintiffs' Class Allegations (ECF No. 26), and Plaintiffs' Motion for Leave to File a Second Amended Complaint ("Motion for Leave to Amend") (ECF No. 41). For the following reasons, the court grants the UH Defendants' Motion to Dismiss and denies Plaintiffs' Motion for Leave to Amend.

## I. BACKGROUND

**A.    Facts**

On March 3 and 4, 2018, a cyrogenic freezer at the University Hospitals fertility clinic ran low on liquid nitrogen coolant, causing the freezer's temperature to rise and its contents to thaw. (Am. Compl. ¶¶ 3–4, 45–48, ECF No. 4.) Tragically, the freezer contained more than 4,000 frozen

eggs and embryos from approximately 950 families and individuals who had sought treatment and services from the clinic. (*Id.* ¶ 54.) This "unexpected temperature fluctuation" destroyed or irreparably damaged the eggs and embryos. (*Id.* ¶ 49.)

A subsequent investigation revealed the cause of the freezer's failure and the magnitude of the loss. (*Id.* ¶¶ 51–52.) For some time before the tragedy, the UH Defendants knew the freezer needed maintenance. (*Id.* ¶ 41.) Specifically, the coolant system, which was supposed to draw liquid nitrogen into the storage tank automatically from an external reservoir, was not working correctly. (*Id.*) Yet the UH Defendants did not repair the reservoir or transfer the eggs and embryos to a properly functioning freezer. (*Id.* ¶ 42.) Instead, disregarding the manufacturer's guidelines, employees at the fertility clinic manually added coolant directly into the storage tank. (*Id.* ¶ 44.) When the employees exhausted the fertility clinic's supply, they began taking liquid nitrogen from another lab. (*Id.*) But the employees worried the tank's coolant levels were too low, and on March 2, 2018, they placed an emergency order with their supplier, Defendant Sodexo Operations, LLC ("Sodexo"). (*Id.* ¶ 121.) The freezer temperature began to rise the next day, before Sodexo delivered the liquid nitrogen. (*Id.* ¶¶ 44–46, 123.) Compounding these errors, an off-site monitoring and alarm system—which the UH Defendants contracted with Defendant Computer Aided Solutions LLC ("CAS") to provide—had been turned off and was inoperable leading up to the incident. (*Id.* ¶ 47.) As a result, no one at the fertility clinic knew when the freezer began to thaw. An alarm on the tank itself sounded when the temperature increased, but no one heard it because no one was in the clinic from the afternoon on March 3, 2018, through the morning of March 4, 2018. (*Id.* ¶ 46.) The freezer reached unsafe temperatures during those hours, destroying the eggs and embryos inside. (*Id.* ¶ 48.)

The UH Defendants outlined these mistakes in a March 26, 2018 letter to patients, video posts on social media, and public statements from hospital officials. (*Id.* ¶¶ 53–59.) As the

University Hospitals' CEO acknowledged in a March 27, 2018, statement, the fertility clinic's mistakes and failures caused an irreparable, devastating loss for its patients. (*Id.* ¶¶ 57–59.)

**B.     Procedural History**

Plaintiffs initiated this putative class action on March 2, 2020, against the UH Defendants; Andrew Bhatnager, Ph.D., James Goldfarb, M.D., James Liu, M.D., and Brooke Rossi, M.D. (collectively, "Individual Defendants"); CAS; and Sodexo. (Compl., ECF No. 1.) On March 4, 2020, Plaintiffs filed an Amended Complaint (ECF No. 4) that added Plaintiffs Jane and John Doe 3 and 4 but left the allegations unchanged. Plaintiffs later dismissed the Individual Defendants on May 6, 2020. (ECF No. 28.) And after Jane and John Doe 1 and 2 dismissed their claims with prejudice on June 16, 2020, (ECF No. 42), only Plaintiffs Jane and John Doe 3 and 4, the UH Defendants, CAS, and Sodexo remain as named parties.

The Amended Complaint asserts twelve causes of action. Seven target the UH Defendants: negligence (Count I); breach of contract (Count II); bailment (Count III); violations of Ohio's Consumer Sales Practices Act, Ohio. Rev. Code §§ 1345.01, *et seq.* (Count IV); negligent misrepresentation (Count VII); negligent hiring, training, retention, staffing, and supervision (Count VIII); and medical malpractice (Count XIV). Two target CAS: negligence (Count V) and third-party beneficiary of contracts (Count XI). And three target Sodexo: negligence (Count VI); negligent hiring, training, retention, staffing, and supervision (Count IX); and third-party beneficiary of contracts (Count X). Plaintiffs also seek punitive damages (Count XII) and assert an "issues class" under Federal Rule of Civil Procedure 23(c)(4) (Count XIII).

The parties have since filed a flurry of motions. First, on May 1, 2020, the UH Defendants filed their Motion to Dismiss or, in the alternative, to Strike Plaintiffs' Class Allegations (ECF No. 26) on behalf of all Defendants. On May 21, 2020, before Plaintiffs responded to the first

Motion, the UH Defendants filed a Motion for Partial Summary Judgment (ECF No. 36). Finally, on June 15, 2020, Plaintiffs filed their Motion for Leave to Amend (ECF No. 41). All of these motions are fully briefed, as are the parties' various associated motions to strike or file sur-replies. (*See* ECF Nos. 45, 52, 59, 63.)

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A defendant can challenge the court's subject-matter jurisdiction with a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Such motions can raise either a facial or a factual attack. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). Facial attacks challenge the sufficiency of the pleading itself, whereas factual attacks challenge the factual predicate for subject-matter jurisdiction. *Ritchie*, 15 F.3d at 598. When adjudicating a facial attack, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Id.* By contrast, with a factual attack, the plaintiff's allegations are not entitled to a presumption of truthfulness, and the court exercises "broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings." *Cartwright*, 751 F.3d at 759. Against either type of attack, the plaintiff must establish subject-matter jurisdiction to survive the motion to dismiss. *Id.* at 760. Lack of subject-matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

### B. Federal Rule of Civil Procedure 15

Federal Rule of Civil Procedure 15 governs the process for amending pleadings. Under Rule 15(a)(1), "[a] party may amend its pleading once as a matter of course" within the time period prescribed by the Rule. In all other cases, Rule 15(a)(2) provides that "a party may amend its

pleading only with the opposing party's written consent or the court's leave." Because the Rule dictates that courts "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), courts generally allow amendments absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015) ("[T]he case law in this Circuit manifests 'liberality in allowing amendments to a complaint.'" (quoting *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir.1987))).

### III. LAW AND ANALYSIS

The UH Defendants move to dismiss this action for lack of subject-matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). (Mem. in Supp. at PageID #239–46, ECF No. 26-1.) Alternatively, they ask the court to strike Plaintiffs' class allegations and require Plaintiffs to proceed individually given that hundreds of fertility clinic patients have filed individual, non-class lawsuits, almost all of which already have been resolved. (*Id.* at PageID #246–54.) Although the court finds that it does have subject-matter jurisdiction, the court nonetheless agrees with the UH Defendants that it must dismiss this case. Because that finding is dispositive, the court does not consider the Motion to Strike.

**A.    Defendants' Motion to Dismiss**

1. CAFA and the Home-State Exception

As the UH Defendants point out, CAFA is the only basis Plaintiffs assert for federal jurisdiction. (*Id.* at PageID #236; *see also* Am. Compl. ¶ 7, ECF No. 4.) Congress enacted CAFA in 2005 to address "perceived abusive practices by plaintiffs and their attorneys in litigating major class actions with interstate features in state courts." *Mason v. Lockwood, Andrews & Newnam, P.C.*,

842 F.3d 383, 386 (6th Cir. 2016) (quoting *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1243 (10th Cir. 2009)). By loosening the normal requirements for diversity jurisdiction, CAFA expanded access to federal district courts for class actions with minimally diverse parties, at least 100 class members, and at least $5,000,000 in controversy. 28 U.S.C. §§ 1332(d)(2), (d)(5)(B).

Congress coupled CAFA's expansion of federal jurisdiction with several important exceptions. One, known as the "home-state exception," prohibits federal courts from exercising jurisdiction over cases in which two-thirds or more of the proposed class and all of the primary defendants are citizens of the forum state. 28 U.S.C. § 1332(d)(4)(B). The home-state exception is mandatory when both elements are satisfied—that is, "the district court must abstain from hearing the case, despite having jurisdiction under § 1332(d)(2)." *Mason*, 842 F.3d at 386–87. CAFA also includes another mandatory exception, known as the "local controversy exception," 28 U.S.C. § 1332(d)(4)(A), and a discretionary exception, 28 U.S.C. § 1332(d)(3). But the court focuses on the home-state exception because that is the sole basis the UH Defendants invoke for dismissal.

While the home-state exception is mandatory, it is not jurisdictional. As the Sixth Circuit explained in *Mason*, CAFA's mandatory exceptions operate as a form of abstention rather than divesting the district court of jurisdiction. 842 F.3d at 386.[1] This conclusion follows from Congress's admonishment that district courts "shall decline" to exercise jurisdiction, 28 U.S.C. § 1332(d)(4), which "necessarily implies a prior determination of jurisdiction, since a court could not 'decline'

---

[1] Every other circuit that has addressed this question has reached the same conclusion. *See Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141–42 (2d Cir. 2013); *Quicken Loans Inc. v. Alig*, 737 F.3d 960, 964 (4th Cir. 2013); *Watson v. City of Allen*, 821 F.3d 634, 639 (5th Cir. 2016); *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011); *Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 636 F.3d 971, 973 (8th Cir. 2011); *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1223 (9th Cir. 2020); *Dutcher v. Matheson*, 840 F.3d 1183, 1190 (10th Cir. 2016); *Blevins v. Aksut*, 849 F.3d 1016, 1019–20 (11th Cir. 2017).

jurisdiction that it never had in the first place," *Mason*, 842 F.3d at 389 (quoting *Clark v. Lender Processing Servs.*, 562 F. App'x 460, 465 (6th Cir. 2014)). So if the party invoking federal jurisdiction carries its burden to establish the jurisdictional elements under CAFA, the district court has subject-matter jurisdiction. The burden then falls on the party opposing federal jurisdiction to prove that the court nonetheless must decline to hear the case. *Id.* at 388 ("[E]very circuit to have addressed this issue [] agree[s] that the party seeking to remand under an exception to CAFA bears the burden of establishing each element of the exception by a preponderance of the evidence.").

There is no dispute here that the putative class satisfies CAFA's jurisdictional requirements. Therefore, this court has subject-matter jurisdiction. But a question remains whether the court can exercise its jurisdiction. According to the UH Defendants, the court must decline because the home-state exception mandates dismissal. (Mem. in Supp. at PageID #239–46, ECF No. 26-1.) Plaintiffs disagree. (Resp. at PageID #574–80, ECF No. 39.) As the party invoking the CAFA exception, the UH Defendants must prove that it applies.² *See Mason*, 842 F.3d at 388; (*see also* Mem. in Supp. at PageID #240, ECF No. 26-1 (acknowledging the burden of proof falls on the party seeking to invoke the exception to CAFA)).

2. Primary Defendants

The UH Defendants' Motion to Dismiss turns on a single issue: whether Sodexo is a primary defendant for purposes of the home-state exception. The parties agree that federal jurisdiction over

---

² CAFA exceptions usually arise after the defendant removes to federal court and the plaintiffs seeks to remand. But the same standards apply when, as here, the plaintiffs file in federal court and the defendant seeks dismissal. *Ellis v. Montgomery Cnty.*, 267 F. Supp. 3d 510, 515 (E.D. Pa. 2017) ("[T]he exceptions have been routinely applied in cases originally filed in federal court."). Moreover, a Rule 12(b)(1) motion to dismiss is an appropriate vehicle to raise the home-state exception because, although not strictly jurisdictional, CAFA's mandatory exceptions implicate "a fundamental antecedent question—whether this case even belongs in federal court." *Watson*, 821 F.3d at 638; *see also Ellis*, 267 F. Supp. 3d at 513 n.1.

-7-

this action depends solely on CAFA. They also agree that more than two-thirds of the prospective class members are Ohio citizens and that every Defendant is an Ohio citizen *except* Sodexo, which is a Delaware corporation. (Am. Compl. ¶¶ 18–22, 24, ECF No. 4; Resp. at PageID #574 n.1, ECF No. 39; Reply at PageID #593–94, ECF No. 40.) So if Sodexo is not a primary defendant, as the UH Defendants argue, then this case meets both elements of the home-state exception and the court must decline to exercise jurisdiction. But if Sodexo is a primary defendant, as Plaintiffs maintain, then the home-state exception does not apply and the court can hear this case.

Neither CAFA nor the Sixth Circuit has defined "primary defendants." The parties acknowledge the "settled judicial understanding of 'primary defendants' as those parties having a dominant relation to the subject matter of the controversy, in contrast to other defendants who played a secondary role by merely assisting in the alleged wrongdoing, or who are only vicariously liable." *McClendon v. Challenge Fin. Invs. Corp.*, No. 1:08-CV-1189, 2009 WL 589245, at *13 (N.D. Ohio Mar. 9, 2009); (*see also* Mem. in Supp. at PageID #243, ECF No. 26-1; Resp. at PageID #575, ECF No. 39). But the parties dispute how this distinction between "dominant relation" and "secondary role" manifests into a workable test.

Absent an authoritative definition, the parties assert their own, competing interpretations. Plaintiffs offer a "direct-liability test" based on a single factor: whether the plaintiff alleges direct or indirect liability. (Resp. at PageID #575–78, ECF No. 39.) Under this bright-line rule, every defendant that is directly liable is a primary defendant. By contrast, the UH Defendants advocate a "dominant relation" test that identifies the "real target" of the lawsuit by comparing the nature and seriousness of the claims asserted against each defendant. (Mem. in Supp. at PageID #243–46, ECF No. 26-1.) With this standard, "direct liability is only one of *several* factors a court should look to when assessing whether a party is a 'primary defendant.'" (Reply at PageID #598, ECF No. 40.)

After reviewing the parties' arguments and relevant case law, the court rejects Plaintiffs' direct-liability test. Plaintiffs argue that "the crushing weight of nationwide authority" supports their bright-line rule, including courts within the Sixth Circuit. (Resp. at PageID #574, ECF No. 39.) But the case law tells a very different story. Out of the dozens of district court cases that Plaintiffs cite, only a few found that direct liability is an independently sufficient condition to qualify as a primary defendant. *See, e.g.*, *Nicholson v. Prime Tanning Corp.*, No. 09-6083-CV, 2009 WL 2900042, at *1 (W.D. Mo. Sept. 3, 2009); *Kearns v. Ford Motor Co.*, No. CV 05-5644, 2005 WL 3967998, at *8 (C.D. Cal. Nov. 21, 2005). Within this Circuit, the Eastern and Western Districts of Kentucky are the only courts to do so. (*See* Resp. at PageID #576 n.3, ECF No. 39.) By contrast, the clear majority of Plaintiffs' cases found that, while direct liability is a *necessary* condition to qualify as a primary defendant, it is not a *sufficient* one. Plaintiffs try to obscure this conclusion by amplifying language from cases in which the courts appear to state a narrower rule. (*See* Resp. at PageID #576 n.4, ECF No. 39.) But a close look at these courts' analyses reveals that they considered other factors and tests in addition to direct liability. *See, e.g.*, *Adams v. Macon Cnty. Greyhound Park, Inc.*, 829 F. Supp. 2d 1127, 1139 (M.D. Ala. 2011) (acknowledging "the varying tests defined by other courts for deciding who is and who is not a primary defendant"); *Laddi v. Soraya Motor Co.*, No. C17-0287, 2017 WL 7053651, at *3 (W.D. Wash. May 5, 2017) (considering five different metrics). *McClendon* is a good example. There, another court in this district stated that identifying "'primary defendants' does not require a court to make a pretrial determination of liability or culpability, but rather requires only a review of the complaint to determine which defendants are sued directly." *McClendon*, 2009 WL 589245, at *13. Yet, as the UH Defendants point out, *McClendon*'s analysis dug deeper. (Reply at PageID #597, ECF No. 40.) Rather than considering direct liability in a vacuum, the court examined the extent of each defendant's exposure to the class to determine

whether they had a "dominant relation to the subject matter of the controversy" relative to the other defendants. *McClendon*, 2009 WL 589245, at *14. With this context, Plaintiffs' reliance on *McClendon* and cases like it is misplaced. In short, contrary to Plaintiffs' assertion, the great weight of authority supports the UH Defendants' argument that direct liability is an important but non-dispositive factor to consider when identifying primary defendants.

Every federal appellate court to squarely consider this issue has agreed—including the decisions that Plaintiffs cite. (*See* Resp. at PageID #576 n.4, ECF No. 39.) In *Vodenichar v. Halcon Energy Properties*, *Inc.*, 733 F.3d 497 (3d Cir. 2013), for example, the Third Circuit analyzed CAFA's text, purpose, and legislative history to synthesize a test that identifies "the 'real target' of the plaintiffs' accusations" by asking (1) "if the plaintiffs seek to hold the defendant responsible for its own actions, as opposed to seeking to have it pay for the actions of others," and (2) "whether, given the claims asserted against the defendant, it has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants." *Id.* at 505–06. To develop this test, the *Vodenichar* court "construe[d] the word primary to mean 'principal,' 'fundamental,' or 'direct'" based on its common meaning and surrounding statutory language, *id.* at 504, and bolstered this construction with legislative history indicating that CAFA's use of "primary defendant" meant "those defendants who are the real targets of the lawsuit, i.e., the defendants who would be expected to incur most of the loss if liability is found," *id.* at 505 (quoting H.R. Rep. No. 108-144, at 38 (2003)). The Eleventh Circuit reached the same conclusion after conducting its own statutory analysis in *Hunter v. City of Montgomery*, 859 F.3d 1329, 1335–37 (11th Cir. 2017). Likewise, the Fifth and Ninth Circuits have embraced this comparative approach to differentiate strata of defendants. *See Watson*, 821 F.3d at 641–42; *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1067–69 (9th Cir. 2019).

The Ninth Circuit's decision in *Singh* is particularly instructive. In *Singh*, a plaintiff class of car purchasers sued a car dealership and a loan provider in Washington state court, alleging that the dealership misled customers and improperly charged various add-on costs. 925 F.3d at 1058–61. Like this case, the parties otherwise agreed that the home-state exception's requirements were satisfied, so the issue turned on whether the lender, an out-of-state corporation, was a primary defendant. *Id.* at 1067. After a detailed discussion of *Vodenichar* and the other circuit court decisions, the Ninth Circuit adopted the same approach:

> Aligning ourselves with our sister circuits, we hold that a court analyzing whether a defendant is a "primary defendant" for purposes of CAFA's home state exception should first assume that all defendants will be found liable. The court should then consider whether the defendant is sued directly or alleged to be directly responsible for the harm to the proposed class or classes, as opposed to being vicariously or secondarily liable. The court should also consider the defendant's potential exposure to the class relative to the exposure of other defendants.

*Id.* at 1068. The decision further emphasized that "[c]ourts should not treat these considerations as exhaustive or apply them mechanistically." *Id.* Applying this test, the Ninth Circuit reversed the district court and held that the lender was not a primary defendant because, even though the plaintiffs asserted that it was directly liable for breach of contract and negligent supervision, the lender's liability "depend[ed] on a 'threshold finding' that the Dealership defendants acted unlawfully." *Id.* at 1069 (quoting *Watson*, 821 F.3d at 641). Further, the Ninth Circuit emphasized that the lender's potential financial exposure for interest charged on the improper add-ons was significantly less than the dealership's exposure for the full cost of those add-ons. *Id.*

The court finds *Singh*'s approach, which reflects the law in the Third, Fifth, Ninth, and Eleventh Circuits, persuasive and compelling. It is consistent with CAFA's text and Congress's intent, and it provides a clear, manageable test with which to distinguish defendants and designate those that are primary. Moreover, the parties identify no federal appellate court decisions that conflict

-11-

with this majority position, and this court found none. Seeing no reason to deviate from the uncontroverted majority, the court adopts the test articulated in *Singh*.

With this framework, the court turns to the allegations in this case. Plaintiffs' Amended Complaint names the UH Defendants, Individual Defendants, CAS, and Sodexo as Defendants, and it asserts that they all are liable for their own actions.[3] (Am. Compl. ¶¶ 73–181, ECF No. 4.) On its face, then, the Amended Complaint alleges that each Defendant is directly liable to the class members. But direct liability in this technical sense does not end the court's analysis. *See Singh*, 925 F.3d at 1069 ("It was not enough, however, for the district court to look only at what claims were asserted against which defendants.") As in *Singh*, the court also considers Plaintiffs' description of the parties and their relationships to determine whether Sodexo's liability can stand alone or whether it depends on the actions of another Defendant. *Id.* Here, Plaintiffs characterize themselves as "clients of the Fertility Center" who "entered into contracts with" the UH Defendants. (Am. Compl. ¶¶ 36, 79, ECF No. 4.) By contrast, Plaintiffs have no direct relationship with Sodexo, and the claims against Sodexo hinge on a theory of third-party liability predicated on Sodexo's contract with the UH Defendants. Even assuming, without deciding, that Sodexo owed a duty of care to Plaintiffs, that duty was animated solely by the contractual relationship between Sodexo and the UH Defendants. Sodexo's liability therefore is "one-step removed from, and derivative of, [Plaintiffs'] claims against the UH Defendants," (Reply at PageID #596, ECF No. 40), because any recovery against Sodexo—whether based in contract or tort—necessarily depends on a finding that the UH Defendants breached their contract with Plaintiffs or otherwise violated their duty to preserve and protect Plaintiffs' eggs and embryos. In other words, Sodexo cannot be liable unless the UH

---

[3] As the parties did in their briefs, the court focuses on the UH Defendants and Sodexo because including the other Defendants does not impact the analysis or application of the home-state exception.

Defendants are liable, too. But the reverse is not true: the UH Defendants' potential liability in this action arises independently and is contingent on no other party. This relationship mirrors the orientation in *Singh* where, in sharp contrast to the dealership's stand-alone liability, the lender's liability hinged on a threshold determination regarding the dealership's wrongdoing. 925 F.3d at 1069; *see also Watson*, 821 F.3d at 641 (holding that private defendants were not primary where liability depended on a threshold determination that the state's legislative scheme was unconstitutional). Like the Ninth Circuit, the court finds that such attenuated liability demonstrates that Sodexo is a secondary defendant.

Shifting to the second part of the *Singh* analysis, the operative question is whether Sodexo's exposure to the putative class justifies classifying Sodexo differently than the UH Defendants. On the one hand, the Amended Complaint seeks the same relief from all Defendants—*i.e.* Plaintiffs apportion damages equally to Sodexo and the UH Defendants. (Am. Compl. at PageID #92–93, ECF No. 4.) Further, the class members all suffered the same type of harm stemming from a single event: the failure of the fertility clinic's freezer. So if Sodexo is liable, its exposure extends to the entire class. On the other hand, Plaintiffs assert only three causes of action against Sodexo, all of which may be viewed as derivative, compared to seven against the UH Defendants. *See Vodenichar*, 733 F.3d at 506 (discussing the significance and relative number of claims against each defendant); *Singh*, 925 F.3d at 1069 (same). Moreover, the bulk of the Amended Complaint and the most significant claims target the UH Defendants' conduct, whereas the allegations against Sodexo are far less extensive. Indeed, the "Factual Allegations" section, which stretches more than eight pages and recounts in excruciating detail the UH Defendants' failures, mentions Sodexo only once in a brief, conclusory assertion that "Defendant Sodexo failed to timely deliver liquid nitrogen to the embryology lab." (Am. Compl. ¶ 44, ECF No. 4.) Finally, as Plaintiffs point out in the Amended

Complaint, the hospital's public statements and the investigation conducted after the incident demonstrate that the UH Defendants bear primary responsibility for the tragic loss Plaintiffs suffered. (*See id.* ¶¶ 53–59.) Collectively, these factors suggest that "the UH Defendants and Sodexo [occupy] different strata of significance," even though Sodexo faces exposure to the whole class. (Reply at PageID #596, ECF No. 40); *see also Watson*, 821 F.3d 641–42 (emphasizing that "[a] person generally familiar with the case and with the English language who asked, 'Well, which are the primary defendants?'" would differentiate between multiple "defendants occupying three different strata of significance").

After weighing these factors, the court finds that Sodexo is not a primary defendant. The court acknowledges that colorable arguments can be made to the contrary, especially because Sodexo faces similar exposure as the UH Defendants. But the fact that Sodexo's liability is contingent on the UH Defendants shows that the latter are the "real targets" of this lawsuit. Comparing the scope and significance of the allegations and claims against Sodexo versus the UH Defendants confirms this conclusion. Because the parties agree that more than two-thirds of the class members and all Defendants except Sodexo are Ohio citizens, the court's finding that Sodexo is not a primary defendant triggers CAFA's mandatory home-state exception. Consequently, the court must decline to exercise jurisdiction. 28 U.S.C. § 1332(d)(4).

**B.    Plaintiffs' Motion for Leave to Amend**

The conclusion above renders most of the other pending motions moot, but the court pauses to address Plaintiffs' Motion for Leave to Amend (ECF No. 41). Plaintiffs seek leave to file a Second Amended Complaint to substitute new named plaintiffs, largely in response to issues the UH Defendants raise in their Motion for Partial Summary Judgment (ECF No. 36). At a recent status conference, Plaintiffs urged the court to consider the Motion for Leave to Amend before ruling on

-14-

the UH Defendants' Motion to Dismiss. But after reviewing Plaintiffs' Second Amended Complaint, the court finds that granting leave to amend would be futile. *See Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) ("[A] motion to amend may be denied where there is . . . 'futility of amendment.'" (quoting *Foman*, 371 U.S. at 182)). The Second Amended Complaint would be futile despite the new named plaintiffs because it targets the same Defendants with the same claims based on the same allegations. (*See* Second Am. Compl., ECF No. 41-2.) As a result, the home-state exception would require dismissal of the Second Amended Complaint for the same reasons discussed above. *See Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993) ("This Circuit has addressed the issue of 'futility' in the context of motions to amend, holding that where a proposed amendment would not survive a motion to dismiss, the court need not permit the amendment."). The court therefore denies Plaintiffs' Motion for Leave to Amend.

### IV. CONCLUSION

For the foregoing reasons, the court grants the UH Defendants' Motion to Dismiss (ECF No. 26), denies Plaintiffs' Motion for Leave to Amend (ECF No. 41), and denies as moot the parties' other pending motions (ECF Nos. 45, 52, 59, 63). However, the court emphasizes that it expresses no position on the merits of Plaintiffs' claims. This Order merely reflects the fact that if Plaintiffs wish to pursue a class action arising from the tragic incident at the fertility clinic, they must do so in state court.

The within action is hereby dismissed.

IT IS SO ORDERED.

                                         */s/ SOLOMON OLIVER, JR.*
                                         UNITED STATES DISTRICT JUDGE

November 17, 2020